**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: LAURA F. KAGENVEAMA,
                              *Debtor.*

EDWARD J. MANEY, CHAPTER 13
TRUSTEE,
                    *Trustee-Appellant,*

v.

LAURA F. KAGENVEAMA,
                    *Debtor-Appellee.*

No. 06-17083

Bankruptcy Ct. No.
05-28079-PHX-
CGC

ORDER AND
AMENDED
OPINION*

Appeal from the United States Bankruptcy Court
for the District of Arizona
Charles G. Case II, Bankruptcy Judge, Presiding

Argued and Submitted
August 17, 2007—San Francisco, California

Filed June 5, 2008
Amended June 23, 2008

Before: Harry Pregerson, Eugene E. Siler, Jr.,** and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Siler;
Partial Concurrence and Partial Dissent by Judge Bea

*This disposition is published pursuant to Ninth Circuit Rule 36-2(g), at the request of the panel.

**The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

**COUNSEL**

Ronald L. Hoffbauer, Phoenix, Arizona, for the appellant.

Andrew S. Nemeth, Phillips & Associates, Phoenix, Arizona, for the appellee.

Edward Himmelfarb, Department of Justice, Washington, DC, amicus in support of the appellant.

M. Jonathon Hayes, Woodland Hills, California, and Tara Twomey, National Association of Consumer Bankruptcy Attorneys, Washington, DC, amicus in support of the appellee.

**ORDER**

The opinion in *Maney v. Kagenveama*, filed June 5, 2008, is amended as follows: insert <*In re Pak*, 378 B.R. 257, 267

(9th Cir. BAP 2007)> before <*In re Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006)> at line 4 of the slip opinion on page 6373.

## OPINION

SILER, Circuit Judge:

Edward Maney, as Chapter 13 Trustee, appeals the bankruptcy court's order confirming the plan of the debtor, Laura Kagenveama. He argues that the bankruptcy court erred by (1) calculating Kagenveama's "projected disposable income" by multiplying her "disposable income" over the "applicable commitment period" and (2) finding the five-year "applicable commitment period" inapplicable because Kagenveama's resulting "projected disposable income" was a negative number. We affirm.

## I.   Background

In 2005, Kagenveama filed a petition for Chapter 13 protection in the bankruptcy court. In her filing she included the required Schedules A through J, a Statement of Financial Affairs, a Master Mailing List, and a Form B22C Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. Schedules I and J listed Kagenveama's projected monthly income and expenses. Her Schedule I listed a monthly gross income of $6,168.21, with a monthly net income of $4,096.26. Her Schedule J listed monthly expenses of $2,572.37. Subtracting total monthly expenses from total monthly net income left Kagenveama with $1,523.89 in monthly income available to pay creditors.

Kagenveama filed an amended Form B22C listing an average monthly gross income of $6,168.21 for the six months prior to her bankruptcy petition, yielding an annual income of

$74,018.52. Because she was an above-median income debtor, § 1325(b)(3) required her to recalculate her expenses pursuant to § 707(b)(2). This recalculation produced a revised Form B22C listing her "disposable income" as a negative number: -$4.04.

Kagenveama determined that her "projected disposable income" was a negative number because her "disposable income" was a negative number. Because her "projected disposable income" was a negative number, she would not be subject to the "applicable commitment period." However, she voluntarily proposed a plan in which she would pay $1,000 per month with a commitment period of three years. This plan yielded an estimated dividend of $9,444.38 to her unsecured creditors. The Trustee objected because the plan extended only three years, not the five-year "applicable commitment period" under § 1325(b)(4)(A)(ii). The bankruptcy court held that because Kagenveama had no "projected disposable income," she was not required to propose a plan with an "applicable commitment period" of five years. The Trustee appealed, and the bankruptcy court entered an order certifying this case for direct appeal to this court.

## II.   Analysis

The parties dispute the meaning of two phrases contained in § 1325 of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23: "projected disposable income" and "applicable commitment period." This case raises solely questions of law, which we review de novo. *In re Alsberg*, 68 F.3d 312, 314 (9th Cir. 1995).

### A.   "Projected Disposable Income"

The parties dispute whether "projected disposable income" means "disposable income," as defined by § 1325(b)(2), projected over the "applicable commitment period," as Kagen-

veama contends, or whether that phrase connotes a forward-looking concept that only uses the "disposable income" calculation as a starting point, as the Trustee contends. Based on the plain meaning of the statute, we hold that the debtor's interpretation is correct.

The starting point for resolving a dispute over the meaning of a statute begins with the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Where statutory language is plain, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004).

Here, each party claims that the plain text of the statute supports its respective interpretation of projected disposable income. Kagenveama argues that the term "disposable income," as used in § 1325(b)(1)(B), is specifically defined in § 1325(b)(2). She asserts that the word "projected" is a modifier of "disposable income" that requires multiplying "disposable income" out over the "applicable commitment period." The Trustee argues that "disposable income" and "projected disposable income" are not directly linked concepts. Under the Trustee's approach, "projected" necessarily implies a forward-looking concept of "disposable income," which would allow a court to depart from the § 1325(b)(2) "disposable income" calculation and consider other evidence to derive "projected disposable income."

[1] We begin our analysis with the statute. If a trustee or holder of an allowed unsecured claim objects to the confirmation of a plan that does not propose to pay unsecured claims in full, the court may confirm the plan only if the plan provides that all of the debtor's "projected disposable income" received during the "applicable commitment period" is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1). "Projected disposable income" is not a defined term in the Bankruptcy Code. However, "disposable income"

is defined in § 1325(b)(2).[1] Reading the statute as requiring "disposable income," as defined in subsection (b)(2), to be projected out over the "applicable commitment period" to derive the "projected disposable income" amount is the most natural reading of the statute, and it is the one we adopt.

[2] Courts must give meaning to every clause and word of a statute. *Negonsott v. Samuels*, 507 U.S. 99, 106 (1993). Section 1325 uses the term "disposable income" in only two places—§ 1325(b)(1)(B) ("projected disposable income") and § 1325(b)(2) (defining "disposable income"). The substitution of any data not covered by the § 1325(b)(2) definition in the "projected disposable income" calculation would render as surplusage the definition of "disposable income" found in § 1325(b)(2). There can be no reason for § 1325(b)(2) to exist other than to define the term "disposable income" as used in § 1325(b)(1)(B). "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006). The plain meaning of the word "projected," in and of itself, does not provide a basis for including other data in the calculation because "projected" is simply a modifier of the defined term "disposable income." Therefore, to give meaning to every word of § 1325(b), "disposable income," as defined in § 1325(b)(2), must be "projected" in order to derive "projected disposable income."

---

[1] Disposable income is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . ." 11 U.S.C. § 1325(b)(2). Current monthly income, as used here, is a new term under BAPCPA defined as "the average monthly income from all sources that the debtor receives" during the 6-month period preceding the commencement of the case or a date upon which the current income is determined by the court. 11 U.S.C. § 101(10A)(A). Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a debtor to file a statement of current monthly income on Form B22C. Section 1325(b)(3) requires that if a debtor's annualized current monthly income is greater than the median family income of similarly-sized households, then "amounts reasonably necessary to be expended" are determined in accordance with § 707(b)(2).

**[3]** Furthermore, "projected disposable income" has been linked to the "disposable income" calculation before BAP-CPA. Any change in how "projected disposable income" is calculated only reflects the changes dictated by the new "disposable income" calculation; it does not change the relationship of "projected disposable income" to "disposable income."[2] Pre-BAPCPA, "projected disposable income" was determined by taking the debtor's "disposable income," under § 1325(b)(2)(A) & (B), and projecting that amount over the "applicable commitment period." *In re Anderson*, 21 F.3d 355, 357 (9th Cir. 1994).

In *Anderson*, a pre-BAPCPA case, the trustee objected to the confirmation of the debtors' Chapter 13 bankruptcy plan because the debtors proposed to pay only their "projected disposable income" as calculated at the time of the filing of their plan. 21 F.3d at 356. The trustee demanded that the debtors sign a certification that they would devote to the plan all of their *actual* "disposable income," as determined by the trustee, as a prerequisite for plan confirmation. *Id.* at 356-57. The bankruptcy court denied plan confirmation because the debtors refused to sign the certification. *Id.* at 357. We reversed, holding that § 1325(b)(1)(B) requires payment of

---

[2]BAPCPA significantly changed the definition of "disposable income." Before BAPCPA, "disposable income" was defined as income "received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor . . . ." 11 U.S.C. § 1325(b)(2) (2000), *amended by* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 102(h)(2), 119 Stat. 23. Determining what was "reasonably necessary" for the maintenance or support of the debtor was dependent on each debtor's individual facts and circumstances. This amorphous standard produced determinations of a debtor's "disposable income" that varied widely among debtors in similar circumstances. BAPCPA replaced the old definition of what was "reasonably necessary" with a formulaic approach for above-median debtors. 11 U.S.C. § 1325(b)(3). This formula significantly changed the way in which "disposable income" is calculated. However, as demonstrated in *Anderson*, "disposable income" has always been linked to "projected disposable income."

"projected disposable income" as calculated at the time of confirmation. *Id*. at 357-58. *Anderson* shows that, prior to the enactment of BAPCPA, courts determined the debtor's "disposable income" and then "projected" that sum into the future for the required duration of the plan when considering whether to confirm the plan. *Id*. at 357.

The Trustee presents two lines of authority to support his argument that § 1325(b)(1)(B) requires a forward-looking determination of "projected disposable income." The first line holds that the calculation of " 'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of [the debtor's] prepetition income" as computed on Form B22C. *In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006). This authority reasons that "projected disposable income" is not related to "disposable income"; therefore courts are free to arrive at a calculation of "projected disposable income" that ignores the § 1325(b)(2) definition of "disposable income." *Id*. at 723.

We reject this position because the plain language of § 1325(b) links "disposable income" to "projected disposable income," and we are bound by the definition of "disposable income" provided in § 1325(b)(2)(B). Even before the enactment of BAPCPA, we held that "projected" modified "disposable income," thus foreclosing the argument that "projected disposable income" has no relationship to "disposable income." *Anderson*, 21 F.3d at 357. In light of *Anderson*, we cannot read the word "projected" to be synonymous with the word "anticipated" in this context. *See id.* "Those courts that argue Congress intended something more when it referred to 'projected disposable income' in § 1325(b)(1)(B) fail to address the fact that Congress defined 'disposable income' subsequently in § 1325(b)(2)." *In re Miller*, 361 B.R. 224, 235 (Bankr. N.D. Ala. 2007) (citing *In re Rotunda*, 348 B.R. 324, 331 (Bankr. N.D.N.Y. 2006)). To get from the statutorily defined "disposable income" to "projected disposable

income," "one simply takes the calculation . . . and does the math." *In re Alexander*, 344 B.R. at 749.

The second line of cases that the Trustee urges us to follow holds that calculation of "disposable income" under § 1325(b)(2) is merely a starting point for deriving "projected disposable income." *In re Pak*, 378 B.R. 257, 267 (9th Cir. BAP 2007), *In re Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006). Under this line of cases, the data from Form B22C creates a presumptively correct definition of or a rebuttable presumption of "disposable income." *Id.* at 418. The presumptively correct calculation can be rebutted or supplemented by other evidence to arrive at "projected disposable income." *Id.* Courts may consider both the future and historical finances of the debtor to make the calculation. *Id.* at 416.

This line of authority is unpersuasive because no text in the Bankruptcy Code creates a presumptively correct definition of "disposable income" subject to modification based on anticipated changes in income or expenses. In fact, the textual changes enacted by BAPCPA compel the opposite conclusion. The revised "disposable income" test uses a formula to determine what expenses are reasonably necessary. *See* 11 U.S.C. § 1325(b)(2)-(3). This approach represents a deliberate departure from the old "disposable income" calculation, which was bound up with the facts and circumstances of the debtor's financial affairs. *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007); *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006) (stating that "[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding") (internal quotations omitted).

Moreover, BAPCPA's changes to the Bankruptcy Code made it clear that Congress knows how to create a presumption. *See* 11 U.S.C. § 707(b)(2) (stating when the court shall presume abuse exists). Congress could have included a pre-

sumption in § 1325(b)(1)-(2), but it did not. When Congress includes language in one part of a statute and excludes it from another part of the same statute, it is presumed that Congress acted purposely in the disparate inclusion or exclusion. *Barnhart v. Sigmon Coal Co., Inc*., 534 U.S. 438, 439-40 (2002) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)); *Camacho v. Bridgeport Fin. Inc*., 430 F.3d 1078, 1081 (9th Cir. 2005). We decline to follow the line of cases holding that Form B22C creates a presumptively correct definition of "disposable income."

**[4]** Finally, the disposition required by the plain text of § 1325(b) is not absurd. Section 1325(b)'s new approach to calculating "disposable income" for above-median debtors produces a less favorable result for unsecured creditors when "disposable income" is plugged into the "projected disposable income" calculation. We "will not override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as being absurd simply because it leads to results that are not aligned with the old law." *In re Alexander*, 344 B.R. at 747. Furthermore, we will not de-couple "disposable income" from the "projected disposable income" calculation simply to arrive at a more favorable result for unsecured creditors, especially when the plain text and precedent dictate the linkage of the two terms. *See Anderson*, 21 F.3d at 358 (stating that "§ 1325(b)(1)(B) requires provision for 'payment of all projected disposable income' as calculated at the time of confirmation, and we reject the Trustee's attempt to impose a different, more burdensome requirement on the debtors' plan as a prerequisite to confirmation"). If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute. *See Lamie*, 540 U.S. at 542.

**[5]** Furthermore, Chapter 13 trustees were aware of the change in the law and notified Congress of their concerns before BAPCPA was passed, but Congress failed to act. *In re Alexander*, 344 B.R. at 747-48; Marianne B. Culhane &

Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way*, 13 Am. Bankr. Inst. L. Rev. 665, 682 (2005). Absent any revision by Congress, we presume that it was aware of the new result, and the decision not to amend the statute was intentional. *Lamie*, 540 U.S. at 541. While the new law may produce less favorable results for unsecured creditors when applied to above-median income Chapter 13 debtors, it is far from absurd to hold that debtors with no "disposable income" have no "projected disposable income." *See In re Alexander*, 344 B.R. at 750. Furthermore, if the debtor's income increases after the plan is confirmed, the trustee may seek plan modification under § 1329.

## B.   "Applicable Commitment Period"

The Trustee argues that "applicable commitment period" mandates a temporal measurement, i.e., it denotes the time by which a debtor is obligated to pay unsecured creditors, while Kagenveama argues that it mandates a monetary multiplier, i.e., it is merely useful in calculating the total amount to be repaid by a debtor. Based on the plain language of the statute, we conclude that the Trustee's interpretation is correct, but that the "applicable commitment period" requirement is inapplicable to a plan submitted voluntarily by a debtor with no "projected disposable income."

**[6]** Prior to BAPCPA, the Bankruptcy Code provided for a three-year period. However, BAPCPA changed "three year" to "applicable commitment," but left the word "period" unchanged. Based on widely accepted temporal connotation of "period," the bankruptcy court noted that § 1329(c) "makes clear that 'applicable commitment period' has a temporal meaning . . . ." However, the bankruptcy court went on to observe that in this case the "applicable commitment period" is irrelevant because it is applicable only to the payment of "projected disposable income," and, in this case, there is no "projected disposable income." The bankruptcy court also noted that the plain language of the Code compels the conclu-

sion that the "applicable commitment period" is not the minimum plan duration, but instead "represents the period over which payments of projected disposable income must be devoted to unsecured creditors."

**[7]** If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan and the debtor is unable to provide for full payment of allowed unsecured claims, the debtor must propose a plan in which all "projected disposable income" is submitted to make payments for the "applicable commitment period" in order for the plan to be confirmed. 11 U.S.C. § 1325(b)(1). The plain meaning of the word "period" indicates a period of time. *In re Alexander*, 344 B.R. at 750 (citing Webster's New World Dictionary 1004 (3d College ed. 1994)). However, "applicable commitment period" is exclusively linked to § 1325(b)(1)(B) and the "projected disposable income" calculation. *In re Alexander*, 344 B.R. at 751. Thus, only "projected disposable income" is subject to the "applicable commitment period" requirement. *Id*. Any money other than "projected disposable income" that the debtor proposes to pay does not have to be paid out over the "applicable commitment period." *Id*.

**[8]** There is no language in the Bankruptcy Code that requires all plans to be held open for the "applicable commitment period." Section 1325(b)(4) does not contain a free-standing plan length requirement; rather, its exclusive purpose is to define "applicable commitment period" for purposes of the § 1325(b)(1)(B) calculation. Subsection (b)(4) states "For purposes of this subsection, the 'applicable commitment period' . . . shall be . . . not less than 5 years" for above-median debtors. Subsection (b)(1)(B) states that "the debtor's 'projected disposable income' to be received in the 'applicable commitment period' . . . will be applied to make payments under the plan." When read together, only "projected disposable income" has to be paid out over the "applicable commitment period." When there is no "projected disposable income," there is no "applicable commitment period."

**[9]** Subsections (b)(2) ("disposable income") and (b)(3) ("amounts reasonably necessary to be expended") exist only to define terms relevant to the subsection (b)(1)(B) calculation. Subsection (b)(4), which defines "applicable commitment period," is no different. Aside from the definitional subsection (b)(4), the term "applicable commitment period" is used only once in § 1325: the court may approve the plan over objection if all of the debtor's "projected disposable income" received during the "applicable commitment period" is applied to plan payments. Thus, the "applicable commitment period" applies only to plans that feature "projected disposable income."[3] Here there is none.

A recent decision by the Eighth Circuit Bankruptcy Appellate Panel ("BAP") supports limiting the application of the "applicable commitment period" to plans that have "projected disposable income." *In re Frederickson*, 375 B.R. 829, 835 (2007). In *Frederickson*, the BAP held that "applicable commitment period" does not refer to a minimum plan duration, but rather it refers to the time in which the debtor must pay "projected disposable income" to the trustee. *Id*. Another statutory provision, § 1322(d), governs plan duration for above median income debtors. *Id*. The BAP concluded that "[§] 1322(d) would be superfluous if § 1325(b)(4) set the length of the plan." *Id*. We find this reasoning persuasive.

The Trustee suggests that we should require a five-year plan for confirmation under § 1325 to allow an extended period for unsecured creditors to seek modification under

---

[3]The only other mention of the "applicable commitment period" in Chapter 13 lends support to this position. Section 1329 references the "applicable commitment period under section 1325(b)(1)(B)" when discussing plan modification requirements. This reference shows that the "applicable commitment period" only has meaning when applied to the § 1325(b)(1)(B) calculation. While reading subsection (b)(4) in isolation may lend support to the Trustee's position, reading it in conjunction with subsection (b)(1)(B) shows that subsection (b)(4) governs the length of the plan only where there is "projected disposable income."

§ 1329. If a debtor proposes a three-year plan, receives a discharge, and experiences an increase in income in year four, then the debtor receives a windfall at the expense of creditors. While this approach would promote the sound policy of requiring debtors to repay more of their debts, there is nothing in the Bankruptcy Code that requires a debtor with no "projected disposable income" to propose a five-year plan. We must enforce the plain language of the Bankruptcy Code as written. We may not make changes to the plain language of the Bankruptcy Code based on policy concerns because that is the job of Congress. Nothing in the Bankruptcy Code states that the "applicable commitment period" applies to all Chapter 13 plans.

We stress that nothing in our opinion prevents the debtor, the trustee, or the holder of an allowed unsecured claim to request modification of the plan after confirmation pursuant to § 1329. Here, we are dealing with the plan confirmation requirements of § 1325, not plan modification under § 1329. Another section of the Bankruptcy Code governs modification of the plan before confirmation. 11 U.S.C. § 1323. Because Congress directly addressed the modification of plans in other sections, we need not transform § 1325 into a plan modification tool.

[10] Here, the "applicable commitment period" is irrelevant because it applies only to the payment of "projected disposable income," and, in this case, there is no "projected disposable income." Kagenveama's voluntary payments come from money other than "projected disposable income"; therefore, there is no requirement that these payments occur for five years. Because her "projected disposable income" was zero or less and, therefore, the "applicable commitment period" did not apply, the bankruptcy court properly confirmed her plan. If her income changes in the future before completion of the plan, the Trustee or the holder of an unallowed secured claim may seek modification of the plan under § 1329.

### III. Conclusion

For the foregoing reasons, we AFFIRM the order of the bankruptcy court.

---

BEA, Circuit Judge, concurring in part and dissenting in part:

This case deals with how long a Chapter 13, "wage-earner" debtor in bankruptcy proceedings will have to worry about whether his unpaid creditors can bring up any good changes in his fortunes, to get paid his debts to them. The majority lays down a rule: So long as the debtor can calculate no "disposable income" at the time his creditor plan is confirmed, he can rest easy. The debtor can propose as short a time period as he wants: a day, a week or a month. I dissent because Congress pretty clearly stated his creditors should have up to five years to keep an eye on the debtor to perhaps share in any of his new good times. Respectfully to the majority, I think the rule they adopt creates an incentive for the picaresque, by encouraging a debtor to fiddle with his expenses and income just before he presents his creditor plan for confirmation. So long as he can push up his expenses and delay receipt of income so as to show no "disposable income" at the time of plan confirmation, he can propose such a short period of time that he can save any postponed income from the creditors' clutches. The majority's result is not required by a close reading of the Bankruptcy Code; indeed, quite the opposite is the correct reading. For this reason, I partially dissent from the majority opinion.

I concur in the majority opinion's holding as to the calculation of "projected disposable income." I agree projected disposable income in 11 U.S.C. § 1325(b)(1)(B) is calculated according to § 1325(b)(2)'s statutory definition of "disposable income", using Form B22C—regardless the debtor's actual disposable income on the date of plan confirmation—and then

projected out over the "applicable commitment period." Opinion at 7172-79.

I also concur in the majority opinion's holding that "applicable commitment period," as defined in § 1325(b)(4) and used in § 1325(b)(1)(B) provides a temporal requirement for the length of a Chapter 13 Plan. Opinion at 7178-79. I part company with the majority, however, in its determination the applicable commitment period is mandatory only when the debtor has projected disposable income at the time of plan confirmation. Opinion at 7179-81.

Section 1325(b)(1)(B) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1) & (b)(1)(B).

The applicable commitment period—not less than 5 years for an above median debtor, § 1325(b)(4)(A)(ii), and 3 years for a below median debtor, § 1325(b)(4)(A)(i)—can be shortened "only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B). The majority agrees the applicable commitment provides a temporal requirement, but holds this temporal requirement should not apply to a debtor who has no projected disposable income at the commencement of the commitment period. The language of the statute provides no such exception. The statute requires a plan to "provide that all of the debtor's projected disposable income *to be received* in the

applicable commitment period . . . will be applied to make payments to unsecured creditors." 11 U.S.C. § 1325(b)(1)(B) (emphasis added). Thus, even if a debtor's projected disposable income is zero at the time he seeks plan confirmation, he must commit to pay such disposable income as he receives it —should he receive it—during the applicable commitment period. He can make such a commitment only by proposing a plan that will be in existence at that later date (or otherwise commit to pay all he owed to unsecured creditors in a shorter period of time).

Although the purpose of Chapter 13 bankruptcy is to provide debtors a second chance, it is not a pardon of debt or, at least, a pardon right away. Chapter 13 bankruptcy is a statutorily constructed second chance for debtors that, through the plan modification procedures in § 1329, also provides a second chance for creditors to be repaid by a bankrupt debtor whose financial situation has improved. Section 1329 specifically allows for periodic adjustments to § 1325's disposable income calculation. 11 U.S.C. § 1329(b) (stating § 1325's requirements "apply to any modification under subsection (a) of [§ 1329]."). The applicable commitment period allows unsecured creditors who are otherwise not receiving payment from a debtor five years to monitor the debtor's finances and, in the event the debtor's disposable income increases during that time, file for plan modification under § 1329. Plan modification may occur only "after confirmation of the plan but before the completion of payments under such plan," and a modified plan "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B)." 11 U.S.C. § 1329(a), (c).

The majority agrees that § 1329's provision for plan modification after confirmation is the proper way for a creditor to deal with a possible change in the debtor's income. Opinion at 7182. It then states that, because different sections of the Bankruptcy Code provide for plan modification,[1] "we need

---

[1]The majority also cites 11 U.S.C. § 1323's provision for plan modification *before* plan confirmation. Opinion at 7182. Of course, this pre-

not transform § 1325 into a plan modification tool." *Id*. The five-year requirement of § 1325, however, is a necessary component of plan modification. If the plan is not continued for a five-year period (post-confirmation), an unsecured creditor who discovers the debtor's finances have dramatically improved will find that there is no extant plan to modify. 11 U.S.C. § 1329(a), (c).

Section 1325 governs plan confirmation by providing the requirements a plan must meet before it may be confirmed (when an unsecured creditor or the plan trustee has objected to confirmation of the plan). One of those plan confirmation requirements is that a plan propose an applicable commitment period of a certain length—for an above median income debtor, five years—or pay all owed to unsecured creditors in a shorter period. 11 U.S.C. § 1325(b)(4).

The majority states the duration of an above-median debtor's plan is governed only by § 1322(d);[2] it incorrectly states that to hold that § 1325(b)(4)'s applicable commitment period requirement sets the length of the plan would render § 1322(d) superfluous. Opinion at 7181. First, § 1322(d) sets the *maximum* length of all plans and says nothing of a minimum duration. Section 1325(b)(4)'s applicable commitment period is congruous, rather than superfluous, to § 1322(d); section 1325(b)(4) mirrors § 1322(d)'s maximum plan length of five years for above-median debtors, but applies only to those plans where the plan trustee or an unsecured creditor has objected to the plan's confirmation, and allows for a

_____

confirmation modification provision has no bearing on an analysis of why Congress required a *confirmed plan* to last for a certain period of years.

[2]Under § 1322(d), if the debtor is an above-median debtor, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1). If the debtor is a below-median debtor, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2).

shorter plan period than § 1322(d)'s *maximum* period for above-median debtors who propose to pay all they owe to unsecured creditors in a shorter period of time. Further, the majority statement that § 1325's applicable commitment period provides a temporal requirement for a debtor with projected disposable income at the time of plan confirmation is inconsistent with its later statement that reading § 1325 to require a plan length would render § 1322(d)'s maximum plan length provisions superfluous.

Under the majority's rule, a debtor could mischievously "game the system" and avoid repaying debt to his unsecured creditors by inflating his pre-plan confirmation expenses[3] and deferring income until after plan confirmation.[4] That debtor

---

[3]A debtor could inflate the expenses used to calculate his disposable income. Although the IRS National Standards and Local Standards—instead of the debtor's actual expenditures—sets the amount for many of an above-median income debtor's expenses (*e.g.*, food, clothing, housing, and transportation), 11 U.S.C. § 707(b)(2)(A)(ii)(I), some expenses are not fixed by such IRS standards. Specifically, the disposable income calculation deducts from the debtor's "current monthly income" (*i.e.*, the average monthly income from all sources the debtor received during the 6-month period before filing for bankruptcy, 11 U.S.C. § 101(10A)) his *actual* expenditures for, among other things: charitable contributions, childcare, dependent care, life insurance, optional telephone and telephone services, internet service. *See* Form B22C, http://www.uscourts.gov/rules/BK_Forms_08_Official/B_022C_0108v2.pdf (Every debtor files "Form B22C" with his Chapter 13 Plan to determine whether he is an above or below median income debtor. An above median income debtor must complete additional sections on the form to calculate his "disposable income" based on his "current monthly income" and the expenses provided for in 11 U.S.C. § 707(b)(2). 11 U.S.C. § 1325(b)(2)-(3)).

[4]Although Chapter 13 bankruptcy may be sought only by an "individual with regular income" (*i.e.*, an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a [Chapter 13] plan . . . .", 11 U.S.C. § 101(30)), a debtor could defer income until after plan confirmation the following ways: (1) the debtor could ask his employer to defer payment of some of his expected income until after plan confirmation, perhaps receiving such payment through a post-confirmation bonus; or (2) the debtor could continue working at his current job and defer accepting a higher paying job opportunity until after plan confirmation.

could gain confirmation of his plan with a short commitment period and then reduce his actual expenses and accept his deferred income. Unsecured creditors who discover the debtor's improved financial situation would be limited to seek modification of the debtor's plan only within the short commitment period; indeed, a short commitment period might prevent unsecured creditors ever from receiving payment from a crafty debtor of his unsecured debt. There are many imaginable instances where a debtor's financial situation will dramatically improve after plan confirmation—either through good fortune or clever planning. In such instances, only if a debtor is required to keep his plan active for some period of time (*i.e.*, an "applicable commitment period," which Congress set at five years for an above-median income debtor), will unsecured creditors receive repayment of monies the debtor owes them.

Accordingly, I would hold that regardless whether an above-median debtor's projected disposable income is zero, the debtor whose income is above-median is required to propose a five-year plan,[5] unless his plan otherwise proposes to pay all he owes to unsecured creditors in a shorter period of time. In the case of an above-median debtor who has no projected disposable income, at the moment of plan confirmation, pursuant to the statutory definition of disposable income, this temporal requirement would allow unsecured creditors to monitor the debtor's finances and, in the event the debtor's disposable income increases during the five-year period, file for plan modification under § 1329, seek a recalculation of projected disposable income per Form B22C, and seek to obtain some repayment from the debtor. In the event a debtor wished to pay 100% of his unsecured debt in less than five years, there is no justification for requiring him to drag out the payment process. Obviously, creditors entitled to payment in

---

[5]The debtor is required to provide a plant even if the plan were to show *no* payments planned to be made to unsecured creditors over the five-year period.

full under the plan would rather receive such payment sooner than later.

In Kagenveama's case, the fact the six-month period used in calculating the original projected disposable income yielded a zero does not mean that a different six-month period, some time down the five-year line, will also yield a zero. Accordingly, I would reverse the bankruptcy judge's order rejecting the Trustee's objection to Kagenveama's failure to propose a plan that either adheres to the five-year applicable commitment period or pays all she owes to unsecured creditors in a shorter period of time.