In re Jerold Bern BROWN, Monica Tess Brown, Debtors.

No. 07–22718 ABC.

United States Bankruptcy Court, D. Colorado.

Oct. 10, 2008.

Stephen E. Berken, Denver, CO, for Debtors.

## ORDER DENYING DEBTORS' MOTION TO CONFIRM

A. BRUCE CAMPBELL, Bankruptcy Judge.

Before the Court for interpretation is the meaning of the phrase "applicable commitment period" which was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to 11 U.S.C. § 1325(b)(1)(B).[1] This

1. 11 U.S.C. § 1325(b)(1) prohibits a court from confirming a chapter 13 plan if the

trustee or the holder of an allowed unsecured

Court is being asked to discern the meaning of this phrase in the context of the Chapter 13 Trustee's objection to confirmation of a Chapter 13 plan filed by debtors whose income exceeds the applicable median income in Colorado, their state of residence. Debtors propose a 42 month plan which will not pay all unsecured creditors in full.

## ISSUE

The issue presented by the Trustee's objection is what is the "applicable commitment period" over which the debtor must make payments to the Trustee in payment of unsecured creditors? Is it, as the Trustee argues, a 60 month period fixed strictly by section 1325(b)(4); or can the time period be shortened to less than five (5) years, as the Debtors maintain, when the monthly amount committed to debtor's proposed plan would permit payment of a sum which is equal to or greater than all "projected disposable income" in a shorter period of time? [2]

## UNDISPUTED FACTS

The facts which frame the issue before this Court are undisputed. They derive from Form 22C, the Schedules, including Schedules I & J, and Statement of Financial Affairs, the Claims Register and the briefs of the parties and are as follows:

1. Debtors are both employed and have "current monthly income" ("CMI") [3] as calculated on their Form 22C of $5,891.00;

2. That amount annualized (multiplied by 12) is $70,692.00.

3. Debtors are a household of two (2) and the "applicable median income" for a family of 2 in Colorado is $60,577.00.

---

claim objects to the confirmation of the plan unless:

    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

    (B) the plan provides that all of the debtor's projected disposable income to be received in *the applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. (Emphasis added).

2. An additional issue which the parties in their briefs invite the Court to address is the proper calculation of "projected disposable income" for purposes of 11 U.S.C. § 1325(b)(1)(B), as defined in section 1325(b)(2). This Court declines the parties' invitation. First, the Trustee does not object to confirmation on that basis. Second, and more importantly, this Court concludes in this opinion on the undisputed facts, that the "applicable commitment period," is a fixed five (5) year period. Consequently, regardless of what Debtors' "projected disposable income" is, or how it is calculated, Debtors' plan of a proposed duration of 42 months may not be confirmed as a matter of law.

3. Section 101(10A) provides: The term "current monthly income"—

    (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—

        (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor filed the schedule of current income required under section 521(a)(1)(B)(ii); or

        (ii) the date on which current income is determined by the court for purpose of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii);and

    (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity. . . .

4. Debtors' annualized current monthly income exceeds the applicable median income.

5. Debtors propose a plan which will pay $960 per month for 42 months or a total of $40,320.00.

6. The total of all deductions taken by the Debtors under section 707(b)(2)(A)(ii), (iii) and (iv) is $6,549.41.

7. Debtors' monthly income as reflected on Schedule I is $4,913.82.

8. The total of all monthly expenses taken by Debtors on Schedule J is $3,955.00.

9. The "Statement of Monthly Net Income" as it is referred to on Schedule J indicates that the net difference between Debtors' monthly income and expenses is $958.82.

10. The difference between Debtors' CMI and the deductions permitted under section 707(b)(2) is -$660.67.

11. Debtors list unsecured debt on Schedule F of $69,238.00.

12. The Claims Register in this case includes proofs of claim in an aggregate amount well in excess of Debtors' plan's proposed distributions to Class 4.

## PARTIES' POSITIONS ON THE "APPLICABLE COMMITMENT PERIOD"

The Chapter 13 Trustee objects to confirmation of the Debtors' Amended Plan on the grounds that an above median income Chapter 13 debtor's plan must provide for an applicable commitment period of 60 months. Debtors, whose annualized current monthly income is above the applicable median income for Colorado, are proposing a 42 month plan.

It is the Debtors' position that because the difference between "CMI" as defined in section 101(10A) and the section 707(b)(2)(A) deductions permitted from CMI is a negative number, Debtors' plan may be confirmed. They contend that the "applicable commitment period" although 5 years accordingly to section 1325(b)(4), may be less because they can pay the disposable income required to be contributed to the plan in less time. Because the difference between CMI and the 707(b)(2)(A) deductions is zero, and 60 months $\times$ $0.00 = $0.00, their plan, in which they are paying the net between their Schedule I and J, $960.00 for 42 months, is confirmable.

The Trustee counters simply that Debtors, as above median income debtors, must propose a 60 month plan regardless of the fact that their calculation of disposable income shows no disposable income or is a negative number.[4] It is the Trustee's position that unless the plan provides for 100% repayment of unsecured claims, it may not be shorter than the applicable commitment period of 5 years.

## APPLICABLE COMMITMENT PERIOD AND SECTION 1325(b)(4)(B)

The Trustee advocates a strict interpretation of the language of section 1325(b)(4)(A) and (B). She urges that the "applicable commitment period" is a defined time period which may be shortened only if the debtor pays unsecured claims in full. The Debtors urge the Court to adopt the view that the "applicable commitment period" is a time period within which a debtor must pay disposable income. If there is no disposable income, then there is no "applicable commitment period."

---

4. The Trustee has not objected to the amount Debtors propose to pay into their plan, it would appear, because the Debtors propose to pay the net difference between Schedules I and J. In addition, Trustee has not challenged any of the expenses taken by the Debtors.

Section 1325(b)(1)(B) is among the provisions of the Bankruptcy Code modified by BAPCPA. That section prohibits a court from confirming a plan objected to by the trustee or an unsecured creditor unless the unsecured creditor is paid the full amount of its claim, or a debtor is paying "all of (his or her) projected disposable income to be received *in the applicable commitment period* beginning on the date that the first payment is due under the plan ... to make payments to unsecured creditors under the plan." (Emphasis added.).

Section 1325(b)(4)(A) provides that for purposes of section 1325(b), the "applicable commitment period:"

(A) subject to subparagraph (B), shall be—

(i) 3 years; or

(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than... (the applicable median income); and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

Recently, the Ninth Circuit interpreted the phrase "applicable commitment period" as the Debtors do. *In re Kagenveama,* 541 F.3d 868 (9th Cir.2008) *amending and superceding* 527 F.3d 990 (9th Cir. 2008). In *In re Kagenveama,* the Ninth Circuit concluded that "applicable commitment period" mandates a temporal measurement, i.e., it denotes the time by which a debtor is obligated to pay unsecured creditors, "but the 'applicable commitment period' requirement is inapplicable to a plan submitted voluntarily by a debtor with no 'projected disposable income.'" *In re Kagenveama,* 541 F.3d at 875. The Ninth Circuit reasoned:

There is no language in the Bankruptcy Code that requires all plans to be held open for the "applicable commitment period." Section 1325(b)(4) does not contain a freestanding plan length requirement; rather its exclusive purpose is to define "applicable commitment period" for purposes of the § 1325(b)(1)(B) calculation.... When read together (sections 1325(b)(1)(B) and 1325(b)(4)), only "projected disposable income" has to be paid out over the "applicable commitment period." When there is no "projected disposable income." there is no "applicable commitment period." *Id.* at 876.

This Court agrees with the initial conclusion of the Ninth Circuit, that the "applicable commitment period" is a temporal requirement. This Court, however, respectfully disagrees with the Ninth Circuit's ultimate conclusion. The clear language of the statute compels this Court to conclude that the "applicable commitment period," whether 3 or 5 years, is a fixed time period which a plan must span, regardless of the amount of "projected disposable income." Only if a plan proposes to pay allowed unsecured creditors in full, may debtors propose a shorter period of time.

The intent of BAPCPA was to require debtors who could pay their creditors something, to be "committed" to repayment for a fixed period of time, whether 3 or 5 years. It is the price, according to Congress, that debtors must pay to obtain a discharge. The above median income debtor is "committed" to the longer period of time, 5 years, before being able to receive a discharge. The language of section 1325(b)(4)(B) is explicit that the applicable commitment period, whether 3 or 5 years, "may be less than 3 or 5 years, whichever is applicable ... but *only* if the plan provides for payment in full of all allowed

unsecured claims over a shorter period." (Emphasis added). Thus, a debtor's only "key to the cell" and commuting his 3 or 5 year commitment is 100% repayment.

This reading of section 1325(b)(4) leaves a debtor who has expenses greater than his income at the time of plan confirmation open to being challenged for the duration of his applicable commitment period.[5] If his circumstances change post confirmation, the trustee or an unsecured creditor may force a modification of the confirmed plan in order to require payment of more to creditors.

## APPLICATION OF LAW TO FACTS

Under the agreed facts of this case, Debtors have no "projected disposable income." Debtors' CMI is $5,891.00 and § 707(b)(2) deductions are $6,550.00. Debtors, however, have proposed to pay $960.00 per month, the difference between their income and expenses as reflected on the Schedules I and J, over a period of 42 months. That amount totals $40,320.00.

Of that amount, Debtors propose to pay Class 4 allowed unsecured creditors only $5,789.00. This amount is clearly insufficient to pay allowed unsecured claims which total approximately $39,000.00.[6] Thus, Debtors' plan cannot be confirmed. Accordingly, it is

ORDERED that Debtors' Motion to Confirm their Amended Plan is DENIED; and it is

FURTHER ORDERED that Debtors are afforded a period of twenty days from the entry of this Order within which to file an amended plan consistent with this Order, failing which, this case may be dismissed.

---

**5.** Under 11 U.S.C. § 1329(a)(1), a confirmed plan, at any time before completion of payments under a plan, may be modified to "increase or reduce the amount of payments of claims of a particular class...." Although approval of a post confirmation modification under section 1329, does not require a court to find that a debtor has committed all projected disposable income over an applicable commitment period, the court must find that such a modified plan has been proposed in good faith and otherwise meets the requirements of section 1325(a) of the Code.

**6.** This Court does not need to decide which creditors are included in the phrase "all allowed unsecured creditors" of section 1325(b)(4)(B). It is enough to look at the Claims Register as of the date of this opinion, add allowed unsecured claims, and compare that amount to what Debtors are contributing to their plan to Class 4. Having done so, it is apparent that Debtors have come no where near paying allowed unsecured claims 100% in the 42 month plan they propose.