GRABER, Circuit Judge,
dissenting:
I respectfully dissent. In my view, we are not compelled to follow Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868 (9th Cir.2008), because it is “clearly irreconcilable” with Hamilton v. Lanning, — U.S. -, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). See Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc) (stating principle that a three-judge panel is not bound by a prior circuit precedent in this circumstance).
Kagenveama created a rule under which our circuit set no minimum duration on plans confirmable by certain debtors, such as the ones in this case. See 541 F.3d at 877 (holding that, when a debtor’s projected disposable income was negative, the applicable commitment period “did not apply” and offering no substitute durational requirement).[1] That aspect of Kagenvea-ma is clearly irreconcilable with Lanning, which interprets 11 U.S.C. § 1325(b) (the “disposable income test”) as a vehicle for achieving the congressional intent of making debtors pay as much as they can, but no more, over a fixed period, while allowing discretion to adjust the payout up or down as required by the debtor’s evolving financial situation. In Lanning, the Court rejected the practical consequences resulting from a “mechanical” calculation of projected disposable income, reasoning:
In cases in which a debtor’s disposable income during the 6-month look-back period is either substantially lower or higher than the debtor’s disposable income during the plan period, the me *1039 chanical approach would produce senseless results that we do not think Congress intended. In cases in which the debtor’s disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make. And where, as in the present case, the debtor’s disposable income during the plan period is substantially lower, the mechanical approach would deny the protection of Chapter 13 to debtors who meet the chapter’s main eligibility requirements.
130 S.Ct. at 2475-76 (emphases added).
Lanning involved pre-confirmation adjustments to plan payments, “to account for known or virtually certain changes” in a debtor’s income. Id. at 2475. But, to avoid “denying] creditors payments that the debtor could easily make,” Lanning’s logic must also require a mechanism for posi-confirmation adjustments for unforeseen increases in a debtor’s income.[2] That mechanism is the plan modification procedure of 11 U.S.C. § 1329. See Kagenvea-ma, 541 F.3d at 877 (“If [the debtor’s] income changes in the future before completion of the plan, the Trustee or the holder of an unallowed secured claim may seek modification of the plan under § 1329.”). That mechanism would be illusory unless a plan has some minimum duration.[3] See id. at 879 (Bea, J., dissenting in part) (“The five-year requirement of § 1325 ... is a necessary component of plan modification. If the plan is not continued for a five-year period (post-confirmation), an unsecured creditor who discovers the debtor’s finances have dramatically improved will find that there is no extant plan to modify.”).[4] Accordingly, Lanning *1040 precludes any reading, such as Kagenvea-ma’s, that imposes no minimum duration on a Chapter 13 plan.
The majority suggests that my interpretation ignores the “ ‘plain language of the Bankruptcy Code ’ ” and does so merely for reasons of policy. Maj. op. at 1033-34 n. 8 (quoting Kagenveama, 541 F.3d at 877). Not so. My approach is motivated not by policy concerns, but by fidelity to Banning’s view of congressional intent. See United States v. Ron Pair Enters., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (“The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls.” (emphasis added) (citation, internal quotation marks, and brackets omitted)).
The need for a minimum plan duration, then, leads to the conclusion that Kagen-veama cannot be reconciled with Banning and leaves it to this court to decide what that duration should be in the case of a debtor with negative disposable income. In my view, we should answer that question by looking to the statutory provision that comes closest to setting a minimum plan duration — the “applicable commitment period” definition. That is, so long as some minimum duration is necessary, it makes sense to derive that duration from the definition of “applicable commitment period,” as the Sixth and Eleventh Circuits have done. Baud, 634 F.3d 327; Whaley v. Tennyson (In re Tennyson), 611 F.3d 873 (11th Cir.2010). Furthermore, the legislative history of the disposable income test supports that approach:
Chapter IS Plans To Have a 5-Year Duration in Certain Cases. Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debt- or and the debtor’s spouse combined exceeds certain monetary thresholds. If the current monthly incdme of the debt- or and the debtor’s spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Section 318(2), (3), and (4) make conforming amendments to sections 1325(b) and 1329(c) of the Bankruptcy Code.
H.R.Rep. No. 109-31(1), § 318, at 79 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 146 (emphasis added). The quoted section is confusingly worded, but the title suggests that above-median debtors are to be held to a five-year minimum plan duration without regard to their expenses or disposable income, unless they pay unsecured claims in full over a shorter period.
The majority admits that, as between the two competing statutory interpretations at the heart of this case, neither is necessarily more correct than the other. Maj. op. at 1033, 1038. The majority also concedes that, were it “writing on a clean slate, the contrary conclusion reached by *1041 the Sixth and Eleventh Circuits on this question would deserve consideration.” Id. at 1038. Because our circuit’s rule is clearly irreconcilable with later Supreme Court precedent, we are writing on a clean slate. In so doing, we should consider most strongly the intent of Congress (to require debtors to pay creditors what they can readily afford) and the need for national uniformity in the application of the federal bankruptcy laws. Those two factors compel the conclusion that Kagenveama no longer is good law. I would therefore adopt the holdings of our sister circuits and affirm the bankruptcy court’s decision.

. Indeed, Trustee represents that, in the wake of Kagenveama, some debtors have proposed plans as short as six months.

.The majority observes that creditors will be able to capture the benefit of increases to a debtor’s income because of Lanning’s flexible and forward-looking approach to calculating projected disposable income. Maj. op. at 1035-36. But Lanning applies only to known, or "virtually certain,” increases in income. 130 S.Ct. at 2475. Lanning does not allow courts discretion to consider foreseeable yet uncertain increases to a debtor's income. Consider, for example, a law student who has secured a lucrative associate position, contingent on passing a bar examination. For the purposes of Chapter 13 eligibility, assume further that the law student is also working part time. See 11 U.S.C. § 109(e) (requiring that an individual have regular income in order to be eligible for relief under Chapter 13). The law student's income will foreseeably increase in the near future, but that increase is not "virtually certain,” so Lanning does not allow consideration of the potential increase in calculating projected disposable income. Thus, under Kagenveama, such a debtor can propose a plan that terminates before he or she starts the new job, thereby denying creditors payments that the debtor could easily make in the future.
The majority offers § 1325(a)(3)’s good faith requirement as a solution to this problem, but compliance with Kagenveama’s reading of the Bankruptcy Code may foreclose any bad faith argument. See Meyer v. Lepe (In re Lepe), 470 B.R. 851 (B.A.P. 9th Cir.2012) (concluding that bad faith cannot rest solely on a plan’s attempt to do that which the Bankruptcy Code allows).
Finally, none of the majority’s solutions contends with the problem of unforeseen increases in a debtor's income.

. The imposition of a minimum duration is consistent with Chapter 13’s fundamental nature as a mechanism for voluntary repayment over time by wage earners, as distinct from lump-sum liquidation under Chapter 7. See generally 8 Collier on Bankruptcy ¶ 1300.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

. In Baud v. Carroll, 634 F.3d 327, 354-57 (6th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 997, 181 L.Ed.2d 732 (2012), the Sixth Circuit presented a more thorough discussion of whether a longer plan period would necessarily provide a longer time for plan modification, analyzing a separate question regarding the interpretation of the phrase "completion of payments” for the purposes of plan modification under § 1329. That court declined to resolve the § 1329 question, concluding that it did not affect the analysis of the issue on *1040 appeal. See id. at 356 ("The meaning of ‘completion of payments’ under § 1329(a) is an interesting question that is not before us and therefore must await another day.”).
The parties here do not raise or discuss the "completion of payments” question. I agree with the Sixth Circuit that the "applicable commitment period” question can and should be resolved without delving into the "completion of payments” question.